UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA   )
                             )
         v.               )     No. 1:19-cr-00088-JAW
                             )
DAMIAN PERRY             )

**SENTENCING ORDER**

A defendant asserts that the Court should order a sentence that runs concurrently and has the same terms as a sentence he is currently serving for a federal conviction in Connecticut. In his view, his requested sentence is just, based on his constitutional right to be free from successive punishments for the same offense under the double jeopardy clause. The Court concludes that the consideration of uncharged conduct at the defendant's Connecticut sentencing is not punishment within the scope of the double jeopardy clause, and there is no constitutional violation. The Court will address the question of a just sentence at the sentencing hearing when it evaluates the factors under 18 U.S.C. § 3553(a).

## I.   BACKGROUND

### A.   Procedural Background

On May 15, 2019, a grand jury returned a two-count indictment as to Damian Perry, charging Mr. Perry with 1) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), and 2) unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b). *Indictment* (ECF No. 1). On July 18, 2019, Mr. Perry and the Government filed with the Court a plea agreement that they entered into, in which Mr. Perry agreed to plead guilty to the

Indictment.  *Agreement to Plead Guilty (with Stipulations and Appeal Waiver)* (ECF No. 17) (*Plea Agreement*).  On August 19, 2019, Mr. Perry appeared before the Court and pleaded guilty.  *Min. Entry* (ECF No. 23).  On November 26, 2019, the United States Probation & Pretrial Services Office (PO) prepared a presentence investigation report, which was revised on February 21, 2020 and again on July 10, 2020.  *2nd Revised Presentence Investigation Report* (ECF No. 52) (*PSR*).

On June 26, 2020, the Government filed its sentencing memorandum.  *Gov't's Mem. in Aid of Sentencing* (ECF No. 50) (*Gov't's Sentencing Mem.*).  On October 8, 2020, after two unopposed motions to extend time, Mr. Perry filed his sentencing memorandum.  *Mem. in Aid of Sentencing* (ECF No. 71) (*Def.'s Sentencing Mem.*).  On October 13, 2020, Mr. Perry filed an additional sentencing memorandum under seal.  *Sealed Mem. in Aid of Sentencing* (ECF No. 73) (*Def.'s Sealed Sentencing Mem.*).  On October 19, 2020, the Government filed a reply memorandum.  *Gov't's Reply Mem. in Aid of Sentencing* (ECF No. 76) (*Gov't's Reply Sentencing Mem.*).

### B.     Factual Background[1]

### 1.     The Offense Conduct

No later than October 2015, law enforcement began investigating a drug trafficking organization (DTO) led by Luis Padilla and Damian Perry in Penobscot

---

[1]      The Court relies on the PSR to determine whether the double jeopardy law meets the facts outlined there.  The Court notes that Mr. Perry and the Government have filed multiple exhibits.  The Court does not rely on the exhibits in writing this Order, except to the extent the exhibits reflect what is a matter of public record in the Connecticut and Maine district courts because the Court does not know the extent to which, if at all, the parties object to the other's exhibits.  At the sentencing hearing, the Court will offer counsel an opportunity to argue the facts in their exhibits, and after hearing counsel, the Court will make further findings as necessary about the nature of the conspiracy—namely, whether it was the same or a different conspiracy that Mr. Perry was involved in during 2017—based on the exhibits and the PSR.

County, Maine.  *PSR* ¶ 8.  The investigation, which included controlled buys, surveillance, and the interviews and Grand Jury testimony of confidential sources, revealed the DTO was transporting large quantities of heroin and cocaine base from Waterbury, Connecticut to Penobscot County for distribution.  *Id.*  Local so-called "trap houses," the name in the drug trafficking world for houses where drug deals take place, were used to facilitate the distribution, and the DTO paid the owners of the trap houses with drugs.  *Id.*  The DTO also had several "runners" who distributed drugs on behalf of the DTO and were compensated with money and/or drugs.  *Id.*  Some runners, in exchange for drugs, made resupply trips to Connecticut to bring drugs to Maine for the DTO to distribute.  *Id.*

In early 2016, Mr. Perry became involved with the conspiracy.  *Id.* ¶ 9.  He distributed heroin and cocaine base from various residences in Maine, and Mr. Perry compensated the owner of each residence with heroin, cocaine base, or money for allowing him and others to stay.  *Id.*  The DTO stationed individuals at trap houses and the DTO provided heroin and cocaine base for distribution with the understanding that they would return a portion of the drug proceeds to Mr. Perry and Mr. Padilla.  *Id.*  Based on his recruitment of trap houses, his supervision of runners to deliver drugs on his behalf, and his organization of resupply trips to Maine, the PO concluded that Mr. Perry was a joint leader of the conspiracy with Mr. Padilla.  *Id.*

Based on the interviews and Grand Jury testimony of multiple confidential sources, the PO calculated that the DTO made at least seventeen resupply trips from

Connecticut to Maine with an estimated one hundred grams of cocaine and one hundred grams of heroin for each trip between April 1, 2016 and November 30, 2016. *Id.* ¶¶ 10-11. Thus, the PO attributed a total of 1,700 grams of crack and 1,700 grams of heroin to the DTO. *Id.*

On December 7, 2016, a federal grand jury in the District of Connecticut returned a three-count indictment against Mr. Perry, charging him with 1) conspiracy to distribute and to possess with intent to distribute controlled substances, 2) possession with intent to distribute twenty-eight grams or more of cocaine base, and 3) possession with intent to distribute heroin. *United States v. Damien Perry*, 16-cr-00205-VLB, *Indictment* (ECF No. 13).[2] On December 15, 2016, Mr. Perry was arrested and released the same day on an unsecured $25,000 bond. *PSR* ¶¶ 1, 12. On March 29, 2017, Mr. Perry pleaded guilty to Count 1 of the indictment— conspiracy—pursuant to a plea agreement. *United States v. Damien Perry*, 16-cr-00205-VLB, *Min. Entry* (ECF No. 78); *id.*, *Plea Agreement* (ECF No. 81).

At some point following his release on bail, Mr. Perry resumed his participation in this DTO conspiracy, distributing drugs from Connecticut in Maine. One confidential source, CS-11, testified that he met Mr. Perry in May or June 2017 and made a trip to Connecticut on Mr. Perry's behalf, returning to Maine with fifty grams

---

[2]     The case caption of the Connecticut case lists Mr. Perry's name as "Damien Perry," whereas the case caption of the instant case spells his name "Damian Perry." It appears both parties and the court in the Connecticut case spelled his name "Damien." However, Mr. Perry attached two support letters to his sentencing memorandum in Connecticut that were written by Mr. Perry's grandparents and his mother, who spell his name "Damian." *See United States v. Damien Perry*, 16-cr-00205-VLB, *Damien Perry's Mem. in Aid of Sentencing*, Attachs. 1-2 (ECF No. 216). Assuming Mr. Perry's own mother and grandparents know how to spell his name, the Court refers to Mr. Perry as "Damian Perry."

of heroin.  *PSR* ¶ 13.  Wire transfers between another confidential source, CS-10, and Mr. Perry show transfers of $1,507 in drug proceeds between June 11, 2017 and July 14, 2017.  *Id.* ¶ 14.  Split evenly between crack and heroin and using the conspiracy's rate of $100 per gram crack and $200 per gram heroin, the PO calculated 7.535 grams of crack ($753.50/$100 per gram crack) and 3.7675 grams of heroin ($753.50/$200 per gram heroin).  *Id.*

On July 20, 2017, Mr. Perry instructed three members of the conspiracy to travel to Connecticut and he placed a package of narcotics in their car, instructing one of the females to conceal the drugs on her person.  *Id.* ¶ 15.  The police pulled over the car during a traffic stop in New Hampshire.  *Id.*  After further investigation, authorities discovered a large package of narcotics under one of the passenger's clothing, which laboratory analysis revealed to be 11.75 grams of crack and 130.441 grams of fentanyl.  *Id.*

On August 21, 2017, a confidential informant placed an audio-recorded call to Mr. Perry.  *Id.* ¶ 16.  During the conversation, Mr. Perry told the informant that he had drugs that he wanted to bring to Maine, but he needed a location to sell the drugs, and he asked the informant to find a place where he could stay for this purpose.  *Id.* This conduct serves as the basis for Count 2 of the indictment in this case.  *Id.*

On September 1, 2017, police officers from Brewer, Maine responded to a hotel management complaint about two guests—Mr. Perry and another individual, Carletta Willette.  *Id.*  During a routine warrant check, the officers learned that there was an outstanding warrant for Ms. Willette's arrest, and they arrested her.  *Id.*  A

search of her belongings incident to her arrest revealed 94.1098 grams of crack and 39 grams of heroin.  *Id.*  The September 1, 2017 incident is the conduct comprising Count 1 of the instant offense of conviction.  *Id.*

On September 8, 2017, Mr. Perry was arrested in the District of Connecticut for charges stemming from the July 20, 2017 incident and detained.  *Id.* ¶ 17.  He was charged federally in the District of Connecticut for this offense, but the case was dismissed on May 28, 2020.  *Id.* ¶¶ 15, 51A.

### 2. The Connecticut Conspiracy, 3:16-cr-00205-VLB

Returning to the Connecticut conspiracy charge, on December 7, 2016, a federal grand jury in the District of Connecticut indicted Mr. Perry.  The indictment contained three counts.  *United States v. Damien Perry*, 16-cr-00205-VLB, *Indictment* (ECF No. 13).  The first count alleged a drug trafficking conspiracy among Mr. Perry, Luis Padilla and Cecil Stanley to distribute crack cocaine and heroin from October 1, 2016 to October 12, 2016.  *Id.* at 1-2.  The second count alleged that the three defendants engaged in a specific instance of crack cocaine distribution on October 12, 2016.  *Id.* at 2.  The third count alleged that the three defendants engaged in a specific incident of heroin distribution on October 12, 2016.  *Id.* at 3.  On December 15, 2016, United States Magistrate Judge William I. Garfinkel released Mr. Perry on bail with conditions, including that he not violate federal, state, or local law while on release.  *Id.*, *Order Setting Conditions of Release* at 1 (ECF No. 24).  On March 29, 2017, he pleaded guilty to Count 1 of the indictment—conspiracy.  *Id.*, *Findings and Recommendation on a Plea of Guilty* (ECF No. 83).

On August 29, 2018, Mr. Perry appeared before Judge Vanessa Bryant for sentencing. *Id.*, *Min. Entry* (ECF No. 223). Judge Bryant dismissed counts two and three of the indictment and sentenced Mr. Perry to ninety-two months imprisonment on Count 1, four years of supervised release, and a special assessment of $100. *Id.*, *J.* at 1-2 (ECF No. 224).

During sentencing, Judge Bryant considered the large amount of drugs involved in the offense and Mr. Perry's considerable criminal history, including convictions for distribution of drugs and violence against women. *Id.*, *Tr. of Sentencing Hearing* at 15:18-16:11 (ECF No. 236) (*Connecticut Sentencing Tr.*). Judge Bryant also considered the fact that Mr. Perry continued to sell drugs while on bail, saying "[t]o continue to commit crimes while on pre-trial supervision, to choose to leave the State of Connecticut in violation of a court order, to engage in criminal activity after entering into a plea agreement, to make a mockery of the acceptance of responsibility, requires a substantial sentence." *Id.* at 16:18-24. She stated that Mr. Perry, "not only having read the plea agreement, not only having had it explained to him by his attorney, not only having had it explained to him by the judge and his acknowledging his understanding of the terms of the plea agreement and the conditions thereof, proceeded to go out and disqualify himself for the three-level [acceptance of responsibility] reduction." *Id.* at 17:24-18:5. She further said that Mr. Perry had it within his control to demonstrate that he truly understood the significance of his conduct and was a changed man, "[b]ut instead of doing that, he chose to go out of the State of Connecticut and to put himself in a place where, more

likely than not, he continued to do – or at the very least facilitate, which is no better – the same conduct that brought him before the Court in the first instance. And those decisions have consequences." *Id.* 25:4-16.

### 3.   The Maine Conspiracy, 1:18-cr-00098-JAW

On July 18, 2018, a federal grand jury in the District of Maine returned an indictment to this Court, charging Mr. Perry and six other individuals, including Luis Padilla, with conspiracy to distribute and to possess with intent to distribute controlled substances, specifically crack cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) and § 846. *United States v. Damian Perry*, 18-cr-00098-JAW, *Indictment* (ECF No. 2).

On October 16, 2018, Mr. Padilla moved to dismiss the conspiracy charge on double jeopardy grounds. *Id.*, *Def.'s Mot. to Dismiss Double Jeopardy* (ECF No. 145). He argued that he previously pleaded guilty to a conspiracy charge for the same conduct in the Connecticut conspiracy case. *Id.* at 2. On December 21, 2018, the Court dismissed Mr. Padilla's motion without prejudice, allowing him to refile with more evidence. *Id.*, *Order on Def.'s Mot. to Dismiss* (ECF No. 174). Mr. Padilla filed a renewed motion to dismiss on February 14, 2019. *Id.*, *Def.'s Renewed Mot. to Dismiss Double Jeopardy* (ECF No. 200). On April 16, 2019, the Court granted Mr. Padilla's renewed motion to dismiss. *Id.*, *Order on Def.'s Renewed Mot. to Dismiss* (ECF No. 235). The Court concluded that the Government "failed to show it is not prosecuting [Mr. Padilla] twice for the same crime." *Id.* at 1.

On July 18, 2019, Mr. Perry entered into a plea agreement with the Government.  *Id.*, *Agreement to Plead Guilty (with Stipulations and Appeal Waiver)* (ECF No. 292).  In the agreement, Mr. Perry agreed to plead guilty to both counts of the indictment in the instant case, 19-cr-00088-JAW, and the Government agreed to dismiss the conspiracy charge against Mr. Perry at the time of sentencing.  *Id.* at 1-2.

### 4.    The Maine Substantive Offenses, 1:19-cr-00088-JAW

On May 15, 2019, a grand jury issued a separate indictment against Mr. Perry in the instant case on two counts: 1) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and 2) unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b).  *Indictment.*  The indictment is distinguished from the Connecticut Indictment and Maine Conspiracy Indictment because it does not include a conspiracy charge.  Thus, the Government charged Mr. Perry only with substantive offenses, not conspiracy.  Count 1 stems from the September 1, 2017 incident in Brewer, Maine, which included 94.1098 grams of crack and 39 grams of heroin and Count 2 stems from the August 21, 2017 call between an informant and Mr. Perry.  *PSR* ¶ 16.  On July 18, 2019, Mr. Perry agreed to plead guilty to both counts and the Government agreed to dismiss the conspiracy charge in the Maine conspiracy case, 18-cr-00098-JAW.

Mr. Perry is now ready to be sentenced on the Maine drug distribution counts.

### C.    The Presentence Investigation Report

On July 10, 2020, the PO filed a second revised Presentence Investigation Report (PSR). *2nd Revised Presentence Investigation Report* (ECF No. 52) (*PSR*). The PO calculated a total offense level of 38 and a criminal history category V, for a guidelines range of 360 months to 528 months imprisonment. *Id.* at 10-28.

In an addendum, the PO calculated the impact of not considering Mr. Perry's Connecticut conviction as relevant conduct to the instant offense. *Id.* at 38. The PO states that if the Connecticut conspiracy conviction was not relevant conduct, Mr. Perry would not be held accountable for any drug quantity prior to October 12, 2016. *Id.* This means the drug quantity from paragraph eleven of the PSR (1,700 grams of crack and 1,700 grams of heroin) would be removed, and no additional drug quantity would result from paragraphs ten through thirteen. *Id.* Mr. Perry would, however, still be accountable for drug quantities that occurred from conduct after October 12, 2016, and under the PO's calculation, this totaled 823.81 kilograms of converted drug weight. *Id.* This would leave Mr. Perry with a base offense level of 28 and a total offense level of 34 after enhancements. *Id.* at 39-40. If not relevant conduct, however, the Connecticut conspiracy conviction would be a "prior sentence" pursuant to U.S.S.G. § 4A1.2 and generate three criminal history points, elevating Mr. Perry's criminal history category to VI. *Id.* at 40. Based upon a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range is 262 months to 327 months. *Id.* at 41.

10

Finally, if the Connecticut conviction is not relevant conduct, Mr. Perry is subject to the provisions of U.S.S.G. § 5G1.3(d) as opposed to U.S.S.G. § 5G1.3(b). *Id.* As relevant conduct, the guideline calculation under section 5G1.3(b) would require this Court to take into account the Connecticut sentence to adjust for time Mr. Perry served to date and to have this sentence run concurrently with unserved Connecticut time. U.S.S.G. § 5G1.3(b)(1) ("[T]he court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment"); § 5G1.3(b)(2) ("[T]he sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment"). By contrast, once the Connecticut sentence is not deemed relevant conduct, § 5G1.3(d) allows this Court to impose its sentence consecutively or concurrently in whole or in part with the Connecticut sentence to achieve a reasonable punishment for the Maine offense. U.S.S.G. § 5G1.3(d) (Policy Statement) ("In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense").

## II.   THE PARTIES' POSITIONS[3]

### A.   The Government's Sentencing Memorandum

The Government addresses four issues in its sentencing memorandum: 1) the appropriate drug quantity calculation, 2) the assessment of an aggravating role increase, 3) the assessment of a criminal livelihood increase, and 4) the applicability of U.S.S.G. § 3C1.3 based on Mr. Perry's commission of the instant offense while released on federal bail. *Gov't's Sentencing Mem.* at 1.

Regarding drug quantity, the Government argues that the evidence supports its "extremely conservative" drug quantity calculation of 823.82 kilograms of converted drug weight. *Id.* at 6. The Government explains this amount is based upon only the amounts that Mr. Perry or others acting at his direction distributed or possessed with intent to distribute between March 29, 2017 and September 1, 2017.[4] *Id.* These calculations are based only on the conduct described in paragraphs thirteen through sixteen of the PSR. *Id.* at 7. "To avoid any argument by [Mr. Perry] that he is being punished for conduct that he was sentenced for in Connecticut," the Government asks the Court not to consider any drug quantity possessed and distributed by Mr. Perry up to and including the events in Waterbury, Connecticut in October 2016. *Id.*

---

[3]   The parties raise a number of issues in their sentencing memoranda, but because the Court considers only double jeopardy in this order, it does not address the parties' other issues here and instead will address them at the sentencing hearing.

[4]   Specifically, the Government calculated 92.77 grams of heroin (92.77 kilograms of marijuana equivalent), 113.40 grams of crack (404.95 kilograms of marijuana equivalent), and 130.441 grams of fentanyl (326.1 kilograms of marijuana equivalent) for a total of 823.82 kilograms of marijuana equivalent. *Gov't's Sentencing Mem.* at 6 n.8.

### B.      Damian Perry's Sentencing Memorandum

In his sentencing memorandum, Mr. Perry requests this Court "order a sentence of 92 months, followed by 4 years of supervised release with standard and special conditions, and the standard $100 felony assessment," and he says that the sentence should run concurrently with his Connecticut sentence.  *Def.'s Sentencing Mem.* at 1.  He asks that the sentence be further reduced by the time he has already served, taking into account the Connecticut sentence that Judge Bryant imposed on August 31, 2018.  *Id.*  He claims this should be so based on 1) "his constitutional right to be free from successive punishments for the same offense under the double jeopardy clause" and 2) "as a matter of fairness by way of a variant sentence under 18 U.S.C. § 3553(a)."  *Id.* at 1-2.  "Simply put, the Government seeks to exact a punishment in this matter that it is prohibited from obtaining in the conspiracy charge it has agreed to dismiss against [Mr. Perry]."  *Id.* at 2.  He also addresses the other points made by the Government in its sentencing memorandum, asks for consideration of the ongoing COVID-19 pandemic, and raises the issue of considering relevant conduct in his sentence and criminal history calculation.  *Id.*

In support of his double jeopardy argument, Mr. Perry cites *Witte v. United States*, 515 U.S. 389 (1995).  *Id.* at 7.  While acknowledging the Supreme Court found no violation of due process or double jeopardy, Mr. Perry points to the following language in the opinion: "Petitioner does not argue that the range fixed by Congress is so broad, and the enhancing role played by the relevant conduct so significant, that consideration of that conduct in sentencing has become 'a tail which wags the dogs of

the substantive offense.'"  *Id*. at 8.  He notes that his sentencing in Connecticut is "full of references to his conduct in Maine, despite the Government's attempts to portray the offenses as part of some 'new conspiracy'" and the sentencing court considered the conduct in sentencing Mr. Perry more harshly.  *Id*. at 11-12.  He argues that this consideration of his post-bail actions was relevant conduct used in Connecticut and then reused here in the instant case, and it is "the continued use of conduct that was already considered by the sentencing court in Connecticut [that] violate[s] [his] double jeopardy rights."  *Id*. at 12.  Even though the Government has abandoned pursuit of the full relevant conduct drug weight, it still "continues to pursue guidelines enhancements based on conduct that was already considered by the Court that punished [Mr.] Perry in his Connecticut case."  *Id*. n.3.  Therefore, "[t]he broad sentencing range of 5-40 years and the use of relevant sentencing conduct from the Connecticut-Maine conspiracy is the tail wagging the dog of [Mr. Perry's] substantive offenses here in Maine."  *Id*. at 12-13.  To avoid violation of Mr. Perry's due process rights under the double jeopardy clause, he argues the Court must "not consider conduct from the already charged conspiracy when determining his guidelines sentence and instead consider only that drug weight and conduct actually involved in the instant offenses."  *Id*. at 13.

Mr. Perry also addresses how the Court should consider his relevant conduct. He does not deny that the conduct from the Connecticut case is relevant conduct for this case, but argues that "he cannot be punished for that conduct twice."  *Id*.  He characterizes the substantive offenses in this matter as "merely one transaction in

one distribution phase of the broader conspiracy that he was already punished for in Connecticut" and claims that there is no new conduct for sentencing purposes. *Id.* at 22-23. Therefore, he contends that "[a]ny punishment imposed here beyond 92 months concurrent to the Connecticut sentence is successive to the Connecticut sentence and violates the principles of *Lombard* and *Gonzales*." *Id.* at 23. He also requests the Court apply U.S.S.G. § 5G1.3(b) to his sentence, or if the Court instead applies § 5G1.3(d), "reduce his sentence based on the delays caused by the COVID-19 pandemic." *Id.* at 23, 24 n.8. Finally, he argues that the Government should not be permitted to elevate his criminal history because "the drug weight and conduct from the broader conspiracy is relevant conduct and it cannot now be used against [Mr. Perry] for a second and successive punishment by enhancing his criminal history category." *Id.* at 24.

### C.   The Government's Reply

The Government replied to Mr. Perry's sentencing memorandum. It first stated that it will address all § 3553(a) arguments at the time of the sentencing hearing and it stands by its analysis of the sentencing guideline issues in its opening memorandum. *Gov't's Reply* at 1. Regarding Mr. Perry's double jeopardy arguments, the Government contends that "the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes" and "the fact that [Mr.] Perry was prosecuted and punished for a drug conspiracy offense in Connecticut, does not bar his prosecution and punishment for these substantive offenses here in Maine." *Id.* Still, the Government asks the Court to "limit its consideration of the

evidence to conduct that occurred *after* the conspiracy that he was convicted of in Connecticut" to avoid any concern of double jeopardy violations. *Id.* at 1-2 (emphasis in original).

## III.   DISCUSSION

### A.   Double Jeopardy

Under the Fifth Amendment's double jeopardy clause, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.  The double jeopardy clause "protects against multiple punishments for the same offense." *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012) (quoting *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011)).  In the seminal double jeopardy case, *Blockburger v. United States*, 284 U.S. 299 (1932), the United States Supreme Court described the proper analysis: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.  In *United States v. Dixon*, 509 U.S. 688 (1993), the United States Supreme Court further explained that the double jeopardy clause "applies both to successive punishments and to successive prosecutions for the same criminal offense." *Id.* at 696.  "A defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim.  Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." *United States v. Laguna-Estela*, 394 F.3d 54, 56 (1st Cir. 2005) (quoting *United States v. Booth*, 673 F.2d 27, 30-31 (1st Cir. 1982)).

16

### 1.   Successive Prosecution: Conspiracy and Substantive Offenses

Consistent with *Blockburger*, "[i]t is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pereira v. United States*, 347 U.S. 1, 11 (1954) (citing *Pinkerton v. United States*, 328 U.S. 640, 643-44 (1946)).  In *United States v. Fornia-Castillo*, 408 F.3d 52 (1st Cir. 2005), the First Circuit considered a defendant who had previously been convicted of conspiracy under 21 U.S.C. § 846 and was being prosecuted a second time for substantive offenses under 21 U.S.C. § 841(a)(1).  The First Circuit described as "futile" the argument that defendant "could not be successively prosecuted . . . for substantive drug offenses that were the objects of a drug conspiracy for which [defendant] had already been prosecuted."  *Id.* at 69.  The *Fornia-Castillo* Court concluded that the sequential prosecutions under different statutes "fully satisfy the *Blockburger* test."  *Id.*  *See id.* ("Indeed, it has long been established that conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes because the agreement to do the act is distinct from the [completed] act itself") (internal citations omitted).  The First Circuit further rejected defendant's claim that the government was required to try together all offenses, stating that argument had been "consistently rejected by the [Supreme] Court." *Id.* at 70 (quoting *Dixon*, 509 U.S. at 709 n.14).  "Even where . . . prosecutions for different offenses may be suitable for joinder, successive prosecutions are permitted under the Double Jeopardy Clause so long as the offenses pass the *Blockburger* test . . .." *Id.*

17

The successive prosecutions of Mr. Perry easily pass the *Blockburger* test. In the District of Connecticut, 16-cr-00205-VLB, Mr. Perry was indicted on drug charges pursuant to 21 U.S.C. §§ 846 and 841(a)(1). However, the substantive offense charges under § 841(a)(1) were dismissed and he was convicted only of the conspiracy count under § 846. In the District of Maine, 18-cr-00098-JAW, Mr. Perry was indicted under § 846, but entered a plea agreement to dismiss the conspiracy count of the indictment and he pleaded guilty to the substantive drug trafficking offenses in the instant action, 19-cr-00088-JAW.[5] Thus, as in *Fornia-Castillo*, Mr. Perry was previously sentenced for participation in a drug conspiracy pursuant to § 846 and is now being sentenced for substantive offenses pursuant to § 841(a)(1).

A strong argument could be made that the substantive offenses in this case were not part of the Connecticut drug conspiracy charge at all. The Connecticut indictment charged Mr. Perry with engaging in the conspiracy from October 1, 2016 to October 12, 2016. *United States v. Damien Perry*, 16-cr-00205-VLB, *Indictment*. The Maine offenses now before the Court took place on August 21, 2017 and September 1, 2017 over a year after the ending date of the conspiracy alleged in the Connecticut indictment. Because Mr. Perry committed the instant offenses after he had already been indicted for a conspiracy that he was alleged to have committed and was out on bail, it would be logical to conclude when he engaged in drug distribution

---

[5]    Technically, only one of the Maine offenses is a violation of a drug-trafficking statute. Count One alleges a violation of § 841(a)(1), the statute that criminalizes the possession of cocaine base and heroin with the intent to distribute it. But Count Two alleges a violation of 21 U.S.C. § 843(b), a statute that criminalizes the use of a communication facility, namely a telephone, to distribute controlled substances. But § 843 is part of chapter 13 of title 21, which addresses drug abuse prevention and control and the Court does not rest its decision on this technical difference, since the object of Mr. Perry's unlawful use of a telephone was the distribution of crack cocaine and heroin.

on bail, he was not committing the same crime for which he had already been indicted, but new offenses.

The Court need not decide that issue, however, because the law is clear that even if the substantive drug offenses here were objects of the Connecticut conspiracy, there is no double jeopardy problem. As the First Circuit found in *Fornia-Castillo*, the Court concludes the successive prosecutions of Mr. Perry pass the *Blockburger* test. *See also United States v. Hernandez*, No. 1:18-cr-00098-JAW, 2019 U.S. Dist. LEXIS 48854, at *12-16 (D. Me. Mar. 25, 2019) (concluding defendant's prosecution under § 841(a)(1) and subsequent § 846 prosecution satisfied the *Blockburger* test).

### 2. Successive Punishment

While the prosecution of Mr. Perry in the instant action is plainly not barred by the double jeopardy clause, the heart of Mr. Perry's argument is not that he cannot be prosecuted for the substantive offense but rather it would be unconstitutional to punish him again for the same offense. The Supreme Court has held that "the [Double Jeopardy] Clause serves the function of preventing both successive punishment and successive prosecution and that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Witte v. United States*, 515 U.S. 389, 396 (1995) (internal quotations omitted). "[T]he language of the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being *twice put in jeopardy* for such punishment." *Id.* (emphasis in original).

Mr. Perry argues that he has already been punished for his conduct and should therefore receive a sentence fully concurrent to his Connecticut sentence.  He points to the Connecticut Court's heavy reliance at sentencing on his continued sale of drugs in Maine while he was out on federal bail.  Because the Connecticut Court considered the Maine conduct at sentencing, he argues he was already punished and thus any successive punishment violates the double jeopardy clause.  *Def.'s Sentencing Mem.* at 12-13.

### a.   *Witte v. United States*

Mr. Perry's argument runs counter to settled Supreme Court precedent.  In *Witte v. United States*, 515 U.S. 389 (1995), the Supreme Court considered the same question Mr. Perry now raises—"whether a court violates [the double jeopardy clause] by convicting and sentencing a defendant for a crime when the conduct underlying that offense has been considered in determining the defendant's sentence for a previous conviction."  *Id.* at 391.  In June 1990, Witte was involved in a scheme to import marijuana from Mexico and cocaine from Guatemala.  *Id.*  In August 1990, local authorities arrested four participants in the scheme, but Witte was not taken into custody at that time.  *Id.* at 392.  In January 1991, an undercover Drug Enforcement Administration (DEA) agent spoke with Witte and asked if he would be interested in purchasing one thousand pounds of marijuana.  *Id.*  The drug sale transaction occurred in February 1991 and Witte was arrested.  *Id.*

Witte was charged with conspiring and attempting to possess marijuana with intent to distribute it.  *Id.* at 392-93.  The indictment was limited on its face to the

conduct occurring on or about January 25 through February 8, 1991, thus covering only the later marijuana transaction, not the 1990 conspiracy.  *Id.*  Witte pleaded guilty to the attempted possession count and at sentencing for the marijuana charge, the District Court considered the uncharged conduct involving cocaine.  *Id.* at 394.

In September 1992, another grand jury returned a two-count indictment against Witte for conspiring and attempting to import cocaine—the same cocaine that had been considered at his prior sentencing.  *Id.*  Witte moved to dismiss, arguing that he "had already been punished for the cocaine offenses because the cocaine involved in the 1990 transactions had been considered as 'relevant conduct' at sentencing for the 1991 marijuana offense."  *Id.* at 394-95.  The District Court dismissed the indictment on grounds that "punishment for the indicted offenses would violate the prohibition against multiple punishments contained in the Double Jeopardy Clause of the Fifth Amendment," and the Court of Appeals for the Fifth Circuit reversed.  *Id.* at 395.

The Supreme Court affirmed the Fifth Circuit, holding that "petitioner's double jeopardy theory—that consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range constitutes 'punishment' for that conduct—is not supported by our precedents, which make clear that a defendant in that situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted."  *Id.* at 397.  In other words, the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment

21

for that conduct within the meaning of the Double Jeopardy Clause." *Id.* at 399. "Because consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct," the second prosecution of Witte "d[id] not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense." *Id.* at 406.

The *Witte* Court scrutinized Witte's argument and found that "[a]t its core" the argument is not a claim that the successive cocaine prosecution violates principles of double jeopardy but rather "the more modest contention that he should not receive a second sentence under the Guidelines for the cocaine activities that were considered as relevant conduct for the marijuana sentence." *Id.* at 404. The Court found, however, that "the Guidelines take into account the potential unfairness with which petitioner is concerned." *Id.* For example, U.S.S.G. § 5G1.3 "operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Id.* at 405. The Supreme Court also noted 18 U.S.C. § 3553 and U.S.S.G. § 5K1.1 provide the sentencing court with discretion to depart downward from the Guidelines range. *Id.* at 405-406. Thus, the *Witte* Court found "[s]ignificant safeguards built into the Sentencing Guidelines therefore protect petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct; he would be able to vindicate his interest through appropriate appeals should the Guidelines be misapplied in any future sentencing proceeding." *Id.* at 405.

Other courts have faithfully applied *Witte*. *See United States v. Faulkner*, 793 F.3d 752, 756-57 (7th Cir. 2015) (finding no double jeopardy violation where a 2013 indictment charged defendant with conduct that a judge considered during a 2011 sentencing because "uncharged conduct considered by the judge in the sentencing context . . . does not constitute 'punishment' for purposes of double jeopardy"); *United States v. Gibbs*, 190 F.3d 188, 215 (3d Cir. 1999) ("[A] court does not violate a defendant's protections against double jeopardy when it convicts a defendant for crime X, enhances his sentence for crime X because of conduct Y, and convicts him for conduct Y as well"); *United States v. Bellrichard*, 62 F.3d 1046, 1052 (8th Cir. 1995) (holding that *Witte* compelled the court to reject defendant's argument that imposition of sentence based on conduct for which defendant had received obstruction enhancement in previous proceeding violated double jeopardy); *United States v. McClain*, 707 F. App'x 129, 130 (4th Cir. 2017) (concluding that defendant's argument "that consideration of the conduct . . . during sentencing for the 2014 Conviction and a subsequent conviction in 2016 based on that same conduct constitutes a double jeopardy violation" is "squarely foreclosed by [*Witte*]").

Mr. Perry's situation is remarkably similar to the defendant's in *Witte*. Mr. Perry was charged with conspiracy in Connecticut, and at sentencing that Court considered the uncharged conduct of his continued sale of cocaine and heroin in Maine while released on bail. Mr. Perry was then subsequently charged in the instant case for the same post-bail conduct that was considered at the Connecticut sentencing. The Court agrees with Mr. Perry that at his Connecticut sentencing, the Connecticut

Court quite naturally considered his breach of the Connecticut bail conditions to commit new criminal conduct and his return to drug trafficking as serious matters.[6] Under *Witte*, Judge Bryant's consideration of that conduct is not punishment for purposes of the double jeopardy clause.  Thus the Court may consider that conduct now, as their own substantive offenses, without violating the double jeopardy clause.

### b.     "A Tail Which Wags the Dog"

Mr. Perry concedes that the *Witte* Court's decision does not work in his favor, but he makes a somewhat different argument, namely that consideration of his Connecticut conviction as relevant conduct here is unconstitutional.  He points to specific language where the Supreme Court noted "[p]etitioner does not argue that the range fixed by Congress is so broad, and the enhancing role played by the relevant conduct so significant, that consideration of that conduct in sentencing has become 'a tail which wags the dog of the substantive offense.'"  *Witte*, 515 U.S. at 403 (quoting

---

[6]     Mr. Perry's argument reduces the Connecticut District Judge's complex and considered sentencing evaluation to a single factor—his bail violation and criminal conduct while out on bail. However, the Connecticut sentencing transcript reveals that his bail violation and return to drug dealing were not the only factors the District Judge considered in imposing sentence on Mr. Perry. *Connecticut Sentencing Tr*. 15:18-26:6. Other § 3553(a) factors Judge Bryant discussed were: (1) the "considerable amount of drugs," (2) the danger to society from drug dealing, (3) Mr. Perry's "considerable criminal history that includes the distribution of drugs and violence, and in particular, violence against women," (4) his drug distribution for his "own financial gain," (5) the need to protect the public, (6) the need to deter Mr. Perry, (7) the need to deter others, (8) his commission of crimes while on pretrial supervision, (9) his violation of the court order that prohibited him from leaving the state of Connecticut while on pretrial release, (10) his engaging in criminal activity after having entered a plea agreement, (11) his failure to truly accept responsibility by continuing to harm the public upon release, (12) his decision to plead guilty, (13) the powder cocaine to crack cocaine ratios, (14) the greater addictiveness of crack cocaine, (15) Mr. Perry's plea agreement with the government, (16) the recalculated guideline range of 92 to 115 months, and (17) Mr. Perry's breach of bail and new criminal conduct and what his conduct said about his prospects for redemption. *Id*. The sentencing transcript amply demonstrates that Judge Bryant, having thoughtfully considered "all of the 3553 factors," imposed a sentence of ninety-two months only after she carefully took "into consideration all of the 3553 factors." *Id*. at 26:3. The transcript also demonstrates that Judge Bryant deemed the ninety-two-month period of incarceration "sufficient, but not greater than necessary to fulfill the purposes of sentencing." *Id*. at 26:3-6.

24

*McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)).  Mr. Perry argues that "[t]he broad sentencing range of 5-40 years and the use of relevant sentencing conduct from the Connecticut-Maine conspiracy is the tail wagging the dog of [Mr. Perry's] substantive offenses here in Maine."  *Def.'s Sentencing Mem.* at 12-13.

In support, Mr. Perry relies on *United States v. Lombard*, 72 F.3d 170 (1st Cir. 1995).  In *Lombard*, the defendant was tried before a jury and acquitted on state charges of murder.  *Id.* at 173.  One year later, the defendant was indicted by a federal grand jury for unlawful possession of a firearm, aiding and abetting the same, and conspiracy charges relating to the aftermath of the murders.  *Id.*  The defendant pleaded guilty and during sentencing, the court applied a cross-reference which provided that if his unlawfully possessed firearm had been used in the commission of a murder, his base offense level on that conviction was to be determined by the same guideline applicable to a conviction for murder.  *Id.* at 174.  The result was a base offense level requiring a term of life imprisonment, and defendant was sentenced accordingly.  *Id.*

The First Circuit found that the case "presents precisely the troubling situation that *Witte* makes an effort to distinguish: the applicable statutory sentencing range (fifteen years minimum, no stated maximum) is quite broad, and the enhancing role played by the relevant conduct—the murders—is inordinately significant."  *Id.* at 181-82.  The First Circuit found that "the Guidelines, combined with the absence of a stated statutory maximum, essentially required the district court to determine [defendant's] base offense level as *if* his offense of conviction had been first-degree

25

murder," which "comes perilously close . . . to punishing [defendant] *for* the ostensibly 'enhancing' conduct, the murders." *Id.* at 182 (emphasis in original). The *Lombard* Court thus concluded that the convergence that produced defendant's life sentence "is exactly the reason for the Supreme Court's reserve in *McMillan* and in *Witte* when it carefully withheld its constitutional blessing for a sentence 'enhancement' that would be a 'tail which wags the dog' of a defendant's offense of conviction. That troubling hypothetical is the reality here." *Id.* at 182-83. The First Circuit vacated the life sentence and remanded because "the district court did not recognize its authority to consider whether a downward departure would have been appropriate." *Id.* at 187.

The *Lombard* Court went on to caution, however, that "this is an extreme case" and is "an unusual and perhaps a singular case, at the boundaries of constitutional sentencing law, and does not provide an open door." *Id.* The First Circuit specifically noted that absent the special circumstances highlighted in *Lombard*, "no comparable concerns would be raised by cases involving even sizeable sentence increases based on an uncharged quantity of drugs, an uncharged or acquitted firearms offense, the defendant's commission of an unchargeable state offense, or any number of kindred sentence enhancements." *Id.* at 186-87 (internal citations omitted).

The Court first notes that the Government is no longer requesting the Court consider the Connecticut conspiracy as relevant conduct. *See Gov't's Sentencing Mem.* at 1, 12. Thus, the Government's drug quantity calculation is limited to conduct that occurred after October 2016 and the only role the Connecticut conviction plays is to

add three points to Mr. Perry's criminal history, placing him in criminal history category VI. The Court does not conclude that in this circumstance, the tail of the conspiracy conviction is wagging the dog of the substantive offense conviction.

Even if the Connecticut conviction were considered relevant conduct, the Court concludes that *Lombard* is confined to exceptional circumstances not present here. *See United States v. González*, 857 F.3d 46, 60 (1st Cir. 2017) (distinguishing *Lombard* and noting *Lombard* is the only time the First Circuit has recognized the "tail which wags the dog" concern). As the First Circuit explained in *González*, *Lombard* involved a life sentence based on acquitted conduct and the sentence was vacated because "of the extraordinary confluence of factors that ratcheted up his Guidelines range, plus the district court's failure to recognize that it could consider a downward departure from the constitutionally suspect range." *Id.* The Court finds guidance from *Lombard*'s instruction that "no comparable concerns would be raised by cases involving even sizeable sentence increases based on an uncharged quantity of drugs," *Lombard*, 72 F.3d at 186-87, and concludes this is not the rare circumstance where as a matter of law the tail of relevant conduct wags the dog of the substantive offense.[7]

Even though the Court rejects Mr. Perry's contention that as a matter of law, it is constitutionally precluded from considering Mr. Perry's relevant conduct in this

---

[7]       *Lombard* involved a due process challenge, not a double jeopardy challenge. *Lombard*, 72 F.3d at 172. Mr. Perry makes his argument in a section entitled "Double jeopardy violation" but concludes "[Mr. Perry's] Due Process rights under the Double Jeopardy Clause require this Court not consider conduct from the already charged conspiracy when determining his guidelines sentence and instead consider only that drug weight and conduct actually involved in the instant offenses." *Def.'s Sentencing Mem.* at 13. Regardless of which constitutional provision Mr. Perry challenges, the Court's conclusion does not change.

case, the Court remains open to Mr. Perry's arguments that in considering his sentence, the Court should take into account his Connecticut offense, his lengthy Connecticut federal court sentence, the relationship, if any, between the conduct underlying his Connecticut sentence and conduct underlying the Maine sentence, whether the Court would be punishing him for the same conduct for which the District Judge in Connecticut imposed punishment, and similar arguments related to its obligations to fashion a sentence consistent with the statutory factors of 18 U.S.C. § 3553(a).

### 3.    Conclusion

Mr. Perry's prior conspiracy conviction under 21 U.S.C. § 846 does not bar his prosecution here for substantive offenses under 21 U.S.C. § 841(a)(1). There is no double jeopardy violation because under *Witte*, consideration of uncharged conduct at a prior sentencing is not punishment that would bar subsequent prosecution for that conduct. *Lombard* does not change the result here and the Court retains the ability to depart downward if it has concerns that Mr. Perry would be punished twice for the same conduct. Thus, the Court concludes that there is no double jeopardy violation here.

### B.    Other Arguments

In addition to double jeopardy, Mr. Perry argues that his sentence should run concurrently to his Connecticut sentence based on 18 U.S.C. § 3553(a) considerations. He also disputes the Government's proposed sentencing enhancements pursuant to

U.S.S.G. § 3B1.1(a), § 2D1.1(b)(16)(E), and § 3C1.3.  The Court will address these arguments at the sentencing hearing.

## IV.   CONCLUSION

The Court concludes there is no double jeopardy violation nor is there a problem with the enhancing role Damian Perry's prior conspiracy conviction plays here.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of December, 2020