UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAMIAN PERRY,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent | )<br>)<br>)<br>)<br>)   1:19-cr-00088-JAW-1<br>)   1:24-cv-00105-JAW<br>)<br>)<br>)<br>) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 137.) Following a guilty plea, Petitioner was convicted of possession with intent to distribute a controlled substance and one count of unlawful use of a communication facility; the Court sentenced Petitioner to 137 months in prison. (Judgment, ECF No. 109.) The First Circuit affirmed. *United States v. Perry*, 49 F.4th 33 (1st Cir. 2022).

Petitioner contends his sentence violated the Double Jeopardy Clause and his attorney provided ineffective assistance by advising Petitioner incorrectly regarding Petitioner's eligibility for time credits pursuant to the First Step Act. The Government requests dismissal. (Response, ECF No. 148.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2016, Petitioner participated in a drug trafficking conspiracy with Luis Padilla and others. (Sentencing Stipulation, ECF No. 85; Presentence Investigation Report (PSR) ¶ 8, ECF No. 52.) The drug trafficking organization transported large quantities of cocaine base and heroin from Waterbury, Connecticut for distribution in Penobscot Country, Maine. (PSR ¶ 8.) In October 2016, in the Waterbury area, agents surveilled vehicles in which Petitioner and Padilla were passengers and they observed transfers of items to the vehicle of an associate who was conducting hand-to-hand drug transactions; when the associate was stopped and arrested, authorities found distribution quantities of crack cocaine and heroin. (*Id.* ¶ 12.)

In December 2016, Petitioner was arrested in Connecticut. (Sentencing Stipulation at 1; PSR ¶ 8.) While released on bail for the charges in the District of Connecticut, Petitioner resumed his participation in the drug trafficking organization. (Sentencing Stipulation at 1; PSR ¶ 13.)[1] In September 2017, Petitioner and another individual with drugs in her belongings were arrested at a hotel in Brewer, Maine. (PSR ¶ 16.)

In August 2018, Petitioner was sentenced in the District of Connecticut to ninety-two months in prison. (PSR ¶ 1.) Also in August 2018, a grand jury in the District of Maine returned an indictment charging Petitioner, Padilla, and other individuals with conspiracy to distribute and possess with intent to distribute controlled substances. (Indictment, 1:18-cr-00098-JAW-2, ECF No. 2.) In May 2019, a grand jury returned an

---

[1] Petitioner was also arrested in New Hampshire with other individuals in July 2017 and charged in a separate case in the District of Connecticut, but the charges were later dismissed. (PSR ¶ 15.)

indictment in the District of Maine charging Petitioner with one count of possession with intent to distribute a mixture or substance containing heroin and 28 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C) and 18 U.S.C. § 2, and one count of unlawful use of a communication facility in violation of 21 U.S.C. §§ 843(b) and (d). (Indictment, ECF No. 1.) Pursuant to an agreement with the Government, in August 2019, Petitioner pled guilty to both charges in the 2019 indictment. (Change of Plea Hearing, ECF No. 23; Plea Agreement, ECF No. 17.) Petitioner pled guilty to the 2019 charges in consideration for the Government's agreement to dismiss the 2018 indictment and recommend sentencing guideline reductions for acceptance of responsibility. (Plea Agreement at 1–3.)

In advance of sentencing, the Probation Office recommended the Court consider for guideline purposes certain "relevant conduct" and drug quantities that also supported the conviction and guideline calculations in the District of Connecticut. Petitioner objected to those portions of the presentence report, arguing that the approach would effectively double count some conduct and that doing so would violate the Due Process Clause and Double Jeopardy Clause. (PSR at 34–38.) The Court rejected Petitioner's arguments in a written order. (Sentencing Order at 19–28, ECF No. 79.) Nevertheless, at sentencing in September 2021, the Court accepted the parties' agreement to disregard the Connecticut transactions for purposes of defining the relevant conduct and the Court adopted alternate guideline calculations that were more favorable to Petitioner. (Sentencing Hearing, ECF No. 108; Sentencing Transcript at 24, 40–41, ECF No. 115.) Because the District of Connecticut applied a statutory and guideline enhancement for Petitioner committing new crimes while

3

released on bail, Petitioner made similar Double Jeopardy Clause arguments regarding that enhancement, but the Court rejected the arguments and applied the enhancement. (Sentencing Transcript at 33–34, 42–43.) After other adjustments, the Court found a guideline range of 210 to 262 months; the Court sentenced Petitioner to 137 months in prison for Count I and twelve months in prison on Count II to be served concurrently, with six of the 137 months attributed to the enhancement for the commission of the offenses while released on federal bail. (*Id.* at 118; Judgment, ECF No. 109.) The sentence was to be served concurrently with the remainder of the sentence from the District of Connecticut, but the Court did not adjust the sentence further to credit Petitioner for the time already served toward the Connecticut sentence. (Sentencing Transcript at 118.)

Petitioner filed an appeal; in September 2022, the First Circuit affirmed. *United States v. Perry,* 49 F.4th 33 (1st Cir. 2022). Petitioner raised the double jeopardy and due process arguments regarding the Connecticut relevant conduct and the enhancements for committing the crimes while released on bail, but the First Circuit rejected Petitioner's contentions. *Id.* at 38–41. Petitioner sought Supreme Court review. In February 2023, the Supreme Court denied his petition for a writ of certiorari. *Perry v. United States*, 143 S. Ct. 818 (2023). Petitioner then filed the § 2255 motion in March 2024.

### DISCUSSION

**A.    Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the

4

sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules

developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Double Jeopardy Claims**

Petitioner reiterates his contention that the Court's consideration of certain issues that were also considered by the District of Connecticut, such as the fact that Petitioner committed the new crimes while released on bail, violated double jeopardy and due process principles. Because the Court and the First Circuit already considered and rejected the same arguments, and because Petitioner has not established any exception to the law of the case doctrine, such as an intervening change in the law, Petitioner cannot pursue the issues here. *See Singleton*, 26 F.3d at 240. Even if the Court were to reconsider the arguments,

7

for the reasons the Court and the First Circuit explained previously, Petitioner's arguments are unavailing.

**C.     Ineffective Assistance of Counsel (First Step Act Credits Claim)**

Petitioner argues that counsel provided ineffective assistance at sentencing by assuring him that he would be eligible for a program of time credits even though the guideline enhancement for a leadership role in a heroin trafficking offense would make him ineligible for the credits. "To encourage inmates to participate in [evidence-based recidivism reduction] programs and productive activities," the First Step Act of 2018 (FSA) created a new system of credits that can provide prisoners with an earlier start to pre-release custody or supervised release. *Carroll v. Warden of FCI Berlin Robert Hazlewood*, No. 21-CV-139-PB, 2021 WL 2877463, at *1 (D.N.H. May 26, 2021); 18 U.S.C. § 3632(d). Eligible prisoners earn either ten or fifteen days of FSA credits for each thirty days of successful participation in qualifying programs and activities. 18 U.S.C. § 3632(d)(4)(A). The statute specifies, however, that "[a] prisoner is ineligible to receive [FSA] time credits . . . if the prisoner is serving a sentence for a conviction under" a list of other provisions. 18 U.S.C. § 3632(d)(4)(D). Included in the list are certain provisions of the Controlled Substances Act regarding heroin, methamphetamine, and fentanyl.

A prisoner is ineligible for the credits if convicted under "[s]ubparagraph (A)(i) or (B)(i)" of 21 U.S.C. § 841(b)(1) relating to trafficking in a mixture or substance containing a detectable amount of heroin and if the sentencing court finds under the guidelines "that the offender was an organizer, leader, manager, or supervisor of others in the offense . . . ." 18 U.S.C. § 3632(d)(4)(D)(lxv). The referenced portions of § 841(b)(1) provide for

enhanced penalties when the Government charges a defendant with a trafficking offense involving 100 grams or more of a mixture or substance containing a detectable amount of heroin, 21 U.S.C. § 841(b)(1)(B)(i), and even more significant penalties for a trafficking offense involving 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, 21 U.S.C. § 841(b)(1)(A)(i).

Except for the quantity thresholds for the enhanced penalties, the FSA ineligibility provision is essentially the same for convictions involving methamphetamine. 18 U.S.C. § 3632(d)(4)(D)(lxvii).[2] Regarding fentanyl, a prisoner can lose eligibility for FSA credits if: (1) the Government charged the defendant with violating the enhanced penalty quantity thresholds for fentanyl, 18 U.S.C. § 3632(d)(4)(D)(lxvi), or (2) the Government charged the defendant with violating the enhanced penalty thresholds for any substance and the sentencing court finds that the offense involved a mixture or substance containing a detectable amount of fentanyl and that the defendant was a leader in the offense, 18 U.S.C. § 3632(d)(4)(D)(lxviii).[3] The list of provisions rendering prisoners ineligible for FSA credits does not reference the enhanced penalty thresholds for cocaine or cocaine base.

---

[2] A prisoner is ineligible for FSA credits if convicted under "[s]ubparagraph (A)(viii) or (B)(viii)" of 21 U.S.C. § 841(b)(1) relating to trafficking in a mixture or substance containing a detectable amount of methamphetamine and "if the sentencing court finds" under the guidelines "that the offender was an organizer, leader, manager, or supervisor of others in the offense . . . ." 18 U.S.C. § 3632(d)(4)(D)(lxvii). The referenced portions of § 841(b)(1) provide for enhanced penalties when the Government charges a defendant with a trafficking offense involving 5 grams or more of methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 21 U.S.C. § 841(b)(1)(B)(viii), and even greater penalties for a trafficking offense involving 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 21 U.S.C. § 841(b)(1)(A)(viii).

[3] Under one of the FSA ineligibility provisions, a prisoner is ineligible if convicted under "[s]ubparagraph (A)(vi) or (B)(vi)" of 21 U.S.C. § 841(b)(1) relating to trafficking in a mixture or substance containing a detectable amount of fentanyl or a fentanyl analogue. 18 U.S.C. § 3632(d)(4)(D)(lxvi). The referenced

The Government filed a declaration from Petitioner's attorney, which submission also included copies of letters counsel sent to Petitioner regarding the FSA credits issue. Petitioner and counsel evidently began discussing FSA credits in July 2019, a few weeks after the guilty plea. In March 2021, after Petitioner inquired about the effect of the heroin penalties and the leadership enhancement, counsel wrote to Petitioner advising that he would be ineligible for FSA credits if the Court determined that he was a leader or organizer in the offense because the offense involved trafficking in heroin. (Exhibit 1 at 3, ECF No. 148-1.) In May 2021, after further assessment, counsel advised Petitioner that the provision about which they had communicated regarding heroin offenses would not make him ineligible for FSA credits because Petitioner was only charged with violating the enhanced penalty threshold quantity for cocaine base, not the requisite quantity of heroin. (Exhibit 1 at 5, 7.)

Petitioner has not established deficient performance because he has not shown that counsel's ultimate advice was erroneous. The attorney maintains that his interpretation is consistent with guidance he received from the Federal Defender's Office and is the correct reading of the statute. The Government does not appear to dispute that contention. (*See*

---

portions of § 841(b)(1) provide for enhanced penalties when the Government charges a defendant with a trafficking offense involving 40 grams or more of a mixture or substance containing fentanyl or 10 grams or more of a mixture or substance containing a fentanyl analogue, 21 U.S.C. § 841(b)(1)(B)(vi), and even greater penalties for a trafficking offense involving 400 grams or more of a mixture or substance containing fentanyl or 100 grams or more of a mixture or substance containing a fentanyl analogue, 21 U.S.C. § 841(b)(1)(A)(vi). Under a different FSA ineligibility provision, a prisoner is ineligible if (1) the conviction was under "[s]ubparagraph (A) or (B)" of § 841(b)(1), (2) the sentencing court finds the offense involved a mixture or substance containing a detectable amount of fentanyl or a fentanyl analogue, and (3) the sentencing court finds the offender was a leader under the guidelines. 18 U.S.C. § 3632(d)(4)(D)(lxviii). The provision references the enhanced statutory penalties in general, but it does not refer to any particular set of quantities or substances within § 841(b)(1).

Response at 17 ("Moreover, even if trial counsel provided inaccurate information—which Perry has failed to establish—that alone is not sufficient . . . .")). Petitioner has not alleged that Bureau of Prisons has determined that he is ineligible under § 3632(d)(4)(D)(lxv). Petitioner has also not alleged or provided a document showing that BOP denied his application for FSA credits on that or any other basis.[4]

More importantly, even if Petitioner could establish deficient performance, he cannot establish prejudice from counsel's conduct. The record lacks any credible evidence to suggest that the FSA credits issue played any role in Petitioner's decision to plead guilty. Petitioner also fails to establish that any hypothetical misstatement from counsel impacted the sentence the Court imposed. While Petitioner asserts that counsel's oversight or misunderstanding of the FSA credit ineligibility provisions somehow resulted in less effective efforts or arguments against applying the leadership guideline enhancement, Petitioner does not explain what additional arguments counsel should have made, and none is apparent from a review of the record. *See Washington v. United States*, No. 3:20-CR-187, 2023 WL 7109830, at *3 (D.N.D. Oct. 27, 2023) ("[Petitioner] states in conclusory fashion that her sentence would have been different if she had known that she would not

---

[4] BOP could conceivably have found Petitioner ineligible for the credits but relied on some other basis for the decision. For example, the sentencing court arguably found that Petitioner had trafficked in fentanyl, which implicates a different provision. (*See* PSR at 38; Sentencing Transcript at 111.) There is nothing in the record to suggest that Petitioner raised a concern about any other ineligibility provision. Even if Petitioner's arguments could be construed to assert that counsel was ineffective for failing to predict BOP's analysis, the argument would fail because reasonable fallible attorneys cannot be expected to predict all aspects of sentence execution. Courts generally hold that defense attorneys perform satisfactorily regarding sentencing predictions as long as they do not "grossly mischaracterize" the likely sentence or explicitly promise the client a particular sentence. *See Dawn v. United States*, 411 F. Supp. 3d 90, 98 (D. Mass. 2019).

be eligible for the [FSA credits] reduction. Notably absent from this argument is any factual explanation as to why the result would have been different").

In sum, the ineffective assistance claim fails.[5]

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[5] To the extent that Petitioner might have intended to challenge a BOP decision declaring him ineligible for FSA credits, the proper avenue for relief would be to file a § 2241 petition in the district of confinement after exhausting BOP remedies. *See, e.g., Johnson v. LSCI-Allenwood Warden*, No. 3:23-CV-1841, 2023 WL 8791172, at *1 (M.D. Pa. Dec. 19, 2023) (challenging similar FSA credits eligibility determination by means of a § 2241 petition); *Lallave v. Martinez*, 635 F. Supp. 3d 173, 190 (E.D.N.Y. 2022) (overturning BOP eligibility determination in a § 2241 case). This recommended decision should not be construed as expressing any opinion on the merits of such a challenge.

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 29th day of October, 2024.